TROY INS. CO. (FITZPATRICK v.). See Case No. 4,844.

---

## Case No. 14,195.

### TROY IRON & NAIL FACTORY v. ERASTUS CORNING et al.

[1 Blatchf. 467;[1] 1 Fish. Pat. Rep. 290.]

Circuit Court, N. D. New York. Oct. Term, 1849.[2]

PATENTS—ORIGINALITY—MACHINERY FOR MAKING SPIKES—AGREEMENT—LICENSE.

1. Evidence, as to the originality of an invention, examined by the court, on a hearing on pleadings and proofs, in a suit in equity brought for an injunction and account on the ground of an infringement of the patent, and decided in favor of the patentee, he having the first patent, and the evidence on the part of the defendant not being sufficiently specific and decisive on the question of originality, to overthrow it.

2. B., the patentee, in 1840, of "improvements in the machinery for making hook or brad-headed spikes," claimed that C. was infringing his patent, and brought a suit in equity in 1844, in his own name, against C., for its violation. B. also claimed the exclusive right to make patent horse-shoes, and C. too claimed the right to make them, B. and C. having each a patent for machinery for making horse-shoes. There had been much correspondence between them about their differences, particularly about the spike controversy. While these matters were still in dispute, and the suit was yet pending, a written agreement was made between B. and C., in 1845, which recited the pendency of the suit, and that both parties claimed the right to make the hook-headed spike, and then provided, that the suit should be discontinued, each party paying his own costs, "and that the said parties may each hereafter manufacture and vend spike of such kind and character as they see fit; notwithstanding their conflicting claims to this time." The agreement further recited, that C. claimed the right to make "the patent horse-shoe," and that B. claimed "such right exclusively," and then agreed that B. might make "said patent horse-shoes," and that C. would not make them, and each released to the other all claims and causes of action "by reason of any violation of the patent-rights claimed by them as aforesaid" to that date. Held, that the agreement contained a license to C. to make the hook-headed spike with the machinery so patented to them.

3. Oral evidence, in explanation of the agreement and of the intent of the parties in entering into it, is inadmissible. It must be interpreted by its language, in connection with the subject matters which led to the compromise contained in it.

4. At the time the agreement between B. and C. was made, B. had the legal title to his hook-headed spike patent, and exercised all the acts of ownership over it. In 1848, the plaintiffs, a corporation, acquired the legal title to B.'s patent, and sued C., in equity, for infringing it, claiming that they had the equitable title to it when the agreement was made. Held, that B., as holder of the legal interest in the patent, was competent to settle the disputed claims in respect to it, and that, as the suit between B. and C., which was settled by the agreement, was in B.'s name, and as he was, at the time, the agent of the plaintiffs, and the principal stockholder in their corporation, and as his acts of ownership over the patent were exercised with their knowledge and presumed assent, the settlement made by the agreement was, in judgment of law, with their privity and assent, even conceding that they had the equitable title to the patent at the time.

The plaintiffs were a corporation, created July 20th, 1835, under the act of the legislature of the state of New-York relative to incorporations for manufacturing purposes, passed March 22d, 1811, and the acts continuing and amending the same, for the purpose of manufacturing, at Troy, N. Y., nail-rods, cut-nails, hoop-iron, spikes, &c. On the 2d of December, 1836, they became, by assignment from one Henry Burden, the owners of letters patent granted to said Burden on the 2d of December, 1834, for an "improvement in the machinery for manufacturing wrought nails and spikes;" and, in the assignment, Burden agreed with them, that if he should thereafter make any improvement upon his said invention, he would convey it to them. On the 2d of September, 1840, Burden obtained letters patent for "improvements in the machinery for making hook or brad-headed spikes." The bill claimed that the plaintiffs, by virtue of the agreement of December 2d, 1836, became entitled to the improvements for which the patent of September 2d, 1840, was granted. Burden assigned to the plaintiffs all his right, title and interest in and to that patent, on the 19th of June, 1848. The defendants [Erastus Corning and others] were the owners of "The Albany Iron and Nail Works" at Troy. The bill charged that on the 15th of October, 1845, the defendants erected at their works four or five machines for the manufacture of hook or brad-headed spikes, containing the improvements patented to Burden on the 2d of September, 1840, and had been since and were still engaged in making that description of spikes with those machines, in violation of the exclusive rights of the plaintiffs. The bill also set forth, that in 1842 Burden commenced an action at law in this court against the defendants, for the infringement of the patent of September 2d, 1840, which was defended and tried, and resulted in a verdict of $700 in favor of Burden, and in a judgment in his favor in 1843, by which the originality of the invention and the validity of the patent were established. The plaintiffs prayed for an account and an injunction.

The defendants, in their answer, denied that Burden was the inventor of the improvements covered by the patent of 1840,

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Reversed in 14 How. (55 U. S.) 193.]

and set up that they were invented prior to Burden's application for the patent, by several persons from whom Burden obtained a knowledge of them. They also denied that, under the agreement of 1836, the plaintiffs became, either legally or equitably, entitled to the improvements for which the patent of 1840 was obtained, and insisted that the device of the bending lever for the manufacture of hook-headed spikes, (which was the gist of the patent of 1840,) was a distinct and independent invention, and no "improvement" upon the invention patented in 1834. The claim of the patent of 1840 was for the bending of the end of the spike-rod, from which the head of a hook or brad-headed spike was to be formed, by means of a bending lever, which bent down the end at an angle with the shank, so that it should be in a proper position to receive the blow of the heading die and be formed into a hook-head. The answer further insisted, that the rights of the plaintiffs to the patent of 1840 were subject to the rights of the defendants under the following agreement in writing, entered into between the defendants and Burden on the 14th of October, 1845: "Agreement made this fourteenth day of October, 1845, between Henry Burden of the one part, and Erastus Corning, James Horner, and John F. Winslow of the other part. Whereas a suit is now pending in the circuit court of the United States for the Northern district of New-York, in favor of the said Henry Burden against the said Corning, Horner, and Winslow, arising out of the alleged violation and infringement of a patent right claimed by said Burden for the making of spike, both parties claiming the right to make said spike: It is now agreed between the said parties, that the said suit shall be and is hereby discontinued, each party paying their own costs; and it is further agreed, that the said parties may each hereafter manufacture and vend spike of such kind and character as they see fit, notwithstanding their conflicting claims to this time; and the said John F. Winslow claiming as patentee to have the right, for the benefit of the said Corning, Horner, and himself, to manufacture the patent horse-shoe, and the said Henry Burden also claiming such right exclusively, it is severally agreed by said Corning, Horner, and Winslow, that said Burden may manufacture said patent horse-shoes, and that said Corning, Horner, and Winslow will not manufacture them; and each party, in consideration of the premises, hereby releases to the other or others all claim, demand, and cause of action, by reason of any violation of the patent rights claimed by them as aforesaid to the date hereof." The answer further averred, that this agreement was made as a full settlement and compromise of differences and claims then existing between Burden and the defendants, in regard to the manufacture of horse-shoes and of hook or brad-headed spikes, and as a discontinuance and settle-

ment of a suit in equity then pending in this court, brought by Burden against the defendants, for the making of hook-headed spikes in violation of the patent of 1840. The use of the patented machinery, as alleged in the bill, was admitted in the answer, as also were the suit at law and the verdict and judgment in favor of Burden; but the defendants denied that thereby the originality of Burden's invention or the validity of his patent was established, and averred that the bill in the said suit in equity was filed in 1844, as well for the benefit of the plaintiffs as of Burden, that the suit was pending when the agreement of October, 1845, was made, and was compromised and settled thereby, and that all benefit from the judgment was thus waived as against the defendants. The plaintiffs put in a general replication, and the testimony was taken by a special commissioner, without written interrogatories, the parties having stipulated to waive them.

A large mass of evidence was given on both sides, upon the question of the originality of the invention covered by the patent of 1840; and as to transactions and communications between the parties after the agreement of October, 1845, was made, with a view to explain the agreement, and to show the intent of the parties in entering into it; and as to the matters in difference between the parties before and down to the time of the making of the agreement. A voluminous correspondence between the parties prior to the agreement was put in evidence, and the pendency, at the time the agreement was made, of the equity suit before referred to on the patent of 1840, was shown. It appeared, also, that on the 11th of August, 1843, a patent for an "improvement in machines for forming horse-shoes," &c., was granted to the defendant Winslow and one Osgood; and that Burden had two patents, each for an "improvement in the machine for making horse-shoes," one granted to him November 23d, 1835, and the other September 14th, 1843. All other facts necessary to an understanding of the case will be found stated in the opinion of the court. The cause was heard before NELSON, Circuit Justice, on pleadings and proofs.

Samuel Stevens, for plaintiffs.
William H. Seward, David L. Seymour, and Samuel Blatchford, for defendants.

NELSON, Circuit Justice. I. Upon a full consideration of the proofs concerning the originality of the improvement in the machinery for making hook-headed spikes, for which a patent was granted to Henry Burden on the 2d of September, 1840, I am of opinion, that the weight of it is in favor of the claim of Burden, as the first and original inventor; and that, if the case turned upon this question, the plaintiffs would be entitled to an injunction. The proof is conflicting, and some parts of it are irreconcilable, but the most satisfactory conclusion, in my judg-

ment, is the one above stated. Burden has the first patent, and the evidence on the part of the defendants is not sufficiently specific and decisive upon the question of originality, to overthrow it; on the contrary, independently of the patent, the preponderance of proof is in support of it.

II. In respect to the second ground of defence, I have not been able to bring my mind to doubt, that the agreement entered into by Burden and the defendants, on the 14th of October, 1845, in pursuance of a compromise of existing differences and disputes concerning patent rights, and, among others, the right now in question. contains a license to the defendants to manufacture the hook-headed spike upon the improved machine as patented to Burden on the 2d of September, 1840.

In coming to this conclusion, I lay out of the case entirely the oral evidence given in explanation of the agreement, and of the intent of the parties in entering into it, and confine myself to an examination of the language of the parties in the instrument itself, in connection with the subject matters that led to the compromise. The oral evidence of the intent and meaning of the parties, in explanation of the agreement, is wholly inadmissible, and ought not to have been received. The agreement, being in writing, must speak for itself.

There were at the time two principal matters of difference between the parties, namely, the right to manufacture the hook-headed spike with the bending lever, and the right to make the patent horse-shoe. A suit was pending between them in respect to the former right, which was deemed the most important of the two by Burden. Indeed, the correspondence between the parties shows that this was the chief matter in dispute, the one in which the parties felt the deepest interest, and in respect to which a settlement was deemed most desirable. Now, reading the agreement of the 14th of October, 1845, with these facts in view, it is impossible to hesitate as to its legal import and effect upon the matters in controversy. It recites the suit pending in favor of Burden against the defendants, for an infringement of the patent of 1840 by manufacturing the hook-headed spike, and that both parties claimed the right to manufacture the article; and it is then agreed, that the suit shall be discontinued, each party paying his own costs, and that each may thereafter manufacture and vend spikes of such kind and character as they see fit, notwithstanding their previous conflicting claims. It then recites, that each claimed the right to manufacture the patent horse-shoe, and that Burden claimed the exclusive right, and it is then agreed, that the defendants shall cease the manufacture, and that Burden may continue it; and then follow mutual releases of all claims and demands and causes of action, for alleged previous infringements of patent

rights claimed by the respective parties, down to that time. Why stipulate that the defendants might thereafter manufacture and vend spikes of any character and description, without regard to previous claims to the contrary, if it was not intended to admit or concede the right to manufacture the hook-headed spike? And how can we say that this particular spike is not embraced in the stipulation? What is meant by the agreement, that the defendants may manufacture spikes "of such kind and character as they see fit, notwithstanding their" (the parties') "conflicting claims to this time," if it was intended to exclude the hook-headed? The argument is quite as strong and well-founded to exclude spikes of any other description—indeed stronger, if it were possible, as this particular spike was the principal item in controversy at the time of the compromise or settlement, and a suit was pending in respect to it. The language of the instrument is certainly most remarkable, if it was intended by the parties to exclude the defendants from the right to make this particular spike; as there are not only no words of exclusion or prohibition, but an express admission of the right, in terms so full and specific that no argument can make it clearer. We are asked to interpret a stipulation to make any kind of spikes the parties see fit, to mean any kind except the hook-headed; and that, too, in the case of a compromise of a disputed right to manufacture spikes of this character and description, among other matters, this being regarded as the principal one. I think it impossible to come to any such conclusion, without a disregard of the clear import of the agreement.

III. The compromise and agreement of Burden bind the plaintiffs. He was possessed, at the time, of the legal title to the patent of 1840, and exercised all the acts of ownership over it, with their knowledge and presumed assent. The suit for the infringement was in his name, and was one of the subjects of the settlement; and, besides, he was the agent of the plaintiffs at the time, and the principal stockholder in their company. Being the holder of the legal interest in the patent, he was competent to settle the disputed claims in respect to the improvement, and, conceding that the plaintiffs possessed the equitable title, the settlement, under the circumstances stated, was, in judgment of law, with their privity and assent.

The bill must be dismissed, with costs.[3]

[On appeal to the supreme court the above decree was reversed, and the case remanded to

[3] Decree. This cause having heretofore been brought to a hearing upon the pleadings and proofs, and counsel for the respective parties having been heard, and due deliberation thereupon had, and it appearing to the said court that the said Henry Burden was the first and original inventor of the improvement in the spike machine in the bill of complaint mentioned, and for which a patent was issued to the said Henry Burden, bearing date on the 2nd of September,

this court with directions that an account be taken by a master. 14 How. (55 U. S.) 193. For further proceedings in this litigation, see Cases Nos. 14,196–14,199.]

1840, as in said bill of complaint set forth, and that the said complainants have a full and perfect title to the said patent for said improvement, by assignment from the said Henry Burden, as is stated and set forth in the bill of complaint; but it also further appearing to the court, on the pleadings and proofs, that the instrument in writing bearing date the 14th of October, 1845, stated and set forth in said bill of complaint, and also in the answer of the said defendants thereto, entered into upon a settlement and compromise of certain conflicting claims, between the said parties, and, among others, of mutual conflicting claims to the improvements in the spike machine in said bill mentioned, and which said instrument was executed by the said Henry Burden of the one part, and the said defendants of the other, the said Henry Burden at the time being the patentee and legal owner of the said improvements, and fully authorized to settle and adjust the said conflicting claims, did, in legal effect and by just construction, impart and authorize and convey a right to the defendants to use the said improvements in the manufacture of the hook-headed spike, without limitation as to the number of machines so by them to be used, or as to the place or district in which to be used: Therefore, it is ordered, adjudged, and decreed that the said bill of complaint be and the same is hereby dismissed, with costs to be taxed, and that the defendants have execution therefor.

