---

## FITCHBURG DUCK MILLS v. BARRELL.

### (Circuit Court of Appeals, First Circuit. May 20, 1914.)

### No. 1042.

1. PATENTS (§ 26*)—INVENTION—ADAPTATION OF DEVICE TO NEW ART.

  The introduction into a patented fabric, intended for a special use, of devices previously used in nonanalogous arts may involve invention, especially if, in the new field, they perform a new function or accomplish a new and useful result.

  [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DRIER-FELT FOR PAPER MACHINES.

  The Barrell patent, No. 636,482, for a drier-felt for paper machines, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by William L. Barrell against the Fitchburg Duck Mills. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 207 Fed. 371.

William K. Richardson, of Boston, Mass., for appellant.

Livingston Gifford, of New York City (William Quinby, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This case involves the validity of a patent for an invention relating to an improvement in drier-felts for paper machines. The patent is numbered 636,482, and was granted to William L. Barrell November 7, 1899. It contains two claims, which read as follows:

"(1) A drier-felt for paper machines, consisting of two superposed plies of double-face woven fabric, having large face-warp, said plies being united by smaller binder-warps adjacent the under or inner sides of the face-warps, and buried under the said face-warps of the plies, substantially as described.

"(2) A drier-felt for paper machines, consisting of two superposed plies of close-woven double-face fabric having large face-warps, said plies being united by smaller binder-warps adjacent the under or inner sides of the face-warps, the binder-warps passing from one to the other ply and buried under the said face-warps, successive binder-warps crossing each other as they pass from one to the other ply, substantially as described."

In the early period of the art to which the patent relates, a drier-felt was made of woolen, but for many years prior to the patent in suit it was made of cotton, and was a strong, single-ply fabric. Its strands were unbleached and firmly twisted to render it substantially nonabsorbent. Its weave was sufficiently close to avoid shrinking, stretching, or wrinkling, when in use, and sufficiently porous to permit the passage of steam and heat through it. These qualities were necessary to enable it to perform its function. It was used as an "apron or carrier" on a paper machine "to support the damp, new web of paper as it comes * * * from the wet woolen felt," and to hold "the paper web firmly and smoothly against the heated metal drier-cylinders, around and over which the web passes until dried and ready for the calender-rolls. In this operation, only one side of the drier-felt comes in contact with the damp web of paper and the heated cylinders." The steam generated by the moist paper and the heated cylinders passes through the felt, and in a very short time the warp-threads become burned and loosen, leaving an irregular depression or hole in the surface of the felt, into which the soft paper may press, causing bunches on the finished web, which spoil or greatly reduce the value of the paper. And as the same face of the drier-felt is always brought into contact with the damp paper "the rotting action of the dampness and the heat acts upon the face next the paper, so that when in the ordinary felt a warp-thread is started" a hole may be made, which soon enlarges, and the use of the fabric is at an end.

It was also shown that when any part of a felt becomes burned, so as to break, and permit the draft upon its two sides to be uneven, it is apt to run in a wrinkle, and spoil the paper; that felts are made of

great length, and at times exceed 12 feet in width, and weigh in the vicinity of 1,500 pounds.

Prior to the plaintiff's invention, in order to enable these long and wide felts to carry the wet web evenly and smoothly over the drier cylinders and prevent wrinkling, it was necessary to make the twisted yarn so large as to form a rough surface, which was liable to cause felt marks in the damp paper that could not be removed by calendering, thus rendering it unsalable.

To remedy the difficulties encountered in the use of single-ply drier-felts, the patentee declares in his patent that in his efforts to improve the construction and increase the life of drier-felts he has discovered "that a double-ply fabric composed of two plies of woven fabric, each complete in itself, superposed one upon the other and connected by binder-warps smaller than the face-warps of the plies, will accomplish the desired objects; the binder-warps being so buried by and between the face-warps" as to be protected thereby.

In describing the construction of his novel drier-felt, the patentee states that it consists of two superposed plies, composed of warp and filling-threads made preferably of cotton, each ply being in itself a complete double-faced woven fabric, the two plies being woven in the usual manner, meaning, undoubtedly, the manner known to those skilled in the art of making drier-felts of the single-ply type; that in the process of weaving, smaller binder-warps are introduced, passing around every other filling-thread in each ply; that a number of binder-warps are employed, successive binder-warps crossing each other so that the two plies are firmly bound together; that the smaller binder-warps pass between and adjacent the under sides of the face-warps which spread laterally and bury or cover the binder-warps, which are subjected to a greater tension in weaving.

The particular feature of the double-ply felt is the introduction of numerous binder-warps of a size smaller than the face-warps of the plies which they unite and bind together, the binder-warps being so situated with reference to the face-warps of the plies that their real service begins after the ply which comes in contact with the driers has become burned or partially destroyed; that, while the binder-warps serve to hold the plies together when the felt is new, this is but incidental to their main purpose or function, which is to hold the warp-threads of the inner ply after they have thus become partially destroyed, the broken ends of the warp-threads then presenting a smooth, plush-like surface to the moist paper, and serving to protect the outer ply from the heat and steam. By adopting these means, it was shown that the life of a drier-felt was increased from 60 to 90 per cent., its cost per ton of output of paper was reduced about one-half from what it was when a single drier-felt was used; that damage to the paper, caused by holes in the surface of the felt and from wrinkling, was largely removed; and that the two-ply felt hugged the drier more closely and gave the paper a more even finish.

The appellant contends that the patent is anticipated by the prior art, and in support of its contention relies upon certain patented and unpatented devices of the two-ply construction, some of which are

carpets and some belts for the transmission of power. As to the two-ply carpet fabrics little need be said. They plainly belong to an art in no way analogous to that to which the drier-felt of the patent in suit belongs, and were not intended and could not be used to perform the functions of a drier-felt.

The patent to Cooke, numbered 22,528, issued January 4, 1859, is the one largely relied upon to show anticipation. This patent was for a "new and improved manufacture of webbing for machine belting, cordage, mule harnesses, or other useful purposes." It is urged that it appears from the drawings of this patent that the binder-warps employed to hold the two-plies of the fabric together are smaller than the face-warps of the plies, and are buried by and between them. The specification, however, nowhere alludes to these features, nor to anything showing that they were necessary to the invention. Mosler v. Lurie, 209 Fed. 364, 126 C. C. A. 290. Furthermore, at the time this patent was issued, drier-felts of either the single or double ply type were not known, and it is not to be wondered at that the essential characteristics of a drier-felt were not set forth in the patent. The purpose of the binder-warps of the Cook patent was "to bind together the cloths made by the body-warps and form them with no straight or continuous parallel ridges," and to bring this about the evidence discloses that large binder-warps were employed in the fabrics manufactured under this patent. Under these circumstances, it is probable that the difference in size between the binder and face-warps, as they appear in the drawings of the patent, was employed by the draftsman to meet his fancy in indicating the presence of the two warp-threads in the fabric. The evidence fails to persuade us that the plies of the Cook patent were so constructed as to perform the functions of a drier-felt, or that they were so united by smaller binder-warps as to perform the functions disclosed by the patent in suit. We are therefore of the opinion that anticipation has not been proved by any of the patented or unpatented structures introduced in evidence by the appellant.

[1, 2] The appellant also contends that the appellee's double-ply drier-felt does not involve patentable invention. This contention likewise fails to meet our approval. In the first place, the evidence discloses that prior to the plaintiff's invention the art of making drier-felts for paper machines contained no fabric of the double-ply structure, either of the construction claimed by the appellee or otherwise. Then, again, if we start with the proposition that drier-felts of the single-ply construction were old, that to superpose one such drier-felt upon another did not involve invention, and that binder-warps smaller than the face-warps of the plies were employed to unite two plies of fabric in the art of carpet-making, and perhaps in some other non-analogous arts, long prior to their introduction by the appellee into the drier-felt art, it does not follow that their introduction into this new field of action does not involve invention, especially if in this new field they perform a new function or accomplish a new and useful result. Western Electric Co. v. La Rue, 139 U. S. 601, 606, 11 Sup. Ct. 670, 35 L. Ed. 294; Watson v. Stevens, 51 Fed. 757, 2 C. C. A. 500; Forsyth v. Garlock, 142 Fed. 461, 73 C. C. A. 577. In the fabric of the carpet

art, and the two-ply fabrics of the other arts relied upon by the appellant to show want of novelty, the devices or structures were not subjected to the deteriorating influences of steam and heat, and the binder-warps were not employed to perform any function with reference to such influences, while in the patent in suit the chief and almost sole purpose of their use, as we have heretofore pointed out, was to provide means whereby these influences would be checked, and in a large degree overcome. It was this problem to which the patentee directed his attention, and which the patented article, in the judgment of a large portion of those who have used it in the manufacture of paper, say that it solved. For these reasons, we fully agree with the opinion of the District Court that it cannot properly be said "that the patentee has taken any fabric of the prior art and merely put it into use as a drier-felt." Indeed, it seems to us that there was invention sufficient to sustain the patent in the fact that the patentee introduced the smaller binder-warps into the art of making drier-felts and adapted them to perform a new function, without relying upon the secondary proofs leading to the same conclusion.

In the spring and summer of 1910, the appellant manufactured and sold drier-felts of the two-ply construction, in which the binder-warps were smaller than the face-warps of the plies, and were covered up by the face-warps in the finished article. The treasurer of the appellant company admitted this to be true in his testimony. Moreover, all the evidence leads to the conclusion that, when the appellant's drier-felt is in use, the smaller binder-warps are so covered and buried by the face-warps of the plies as to be protected against the action of the heat and steam from the drier-cylinders and the moist web of paper, and that it is reasonably certain that the article manufactured and sold by the appellant fulfills the requirements set forth in the claims of the patent in suit, and infringes thereon.

The decree of the District Court is affirmed, and the appellee recovers his costs of appeal.