NATIONAL METAL MOLDING CO. v. TUBULAR WOVEN FABRIC CO.

(Circuit Court of Appeals, First Circuit. November 20, 1915.)

No. 1143.

PATENTS &—328—VALIDITY AND INFRINGEMENT—FLEXIBLE ELECTRIC CONDUIT.

The Osburn patent, No. 652,806, for a flexible electric conduit, was not anticipated, and discloses patentable novelty and invention; also *held* infringed.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit in equity by the National Metal Molding Company against the Tubular Woven Fabric Company. Decree for defendant, and complainant appeals. Reversed.

Charles F. Perkins, of Boston, Mass. (Carroll L. Perkins, of Boston, Mass., on the brief), for appellant.

William Quinby, of Boston, Mass., for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. The plaintiff, the National Metal Molding Company, is the owner of United States letters patent No. 652,806, issued July 3, 1900, to H. G. Osburn, and complains of its infringement by the Tubular Woven Fabric Company. The patent is for an improvement in flexible electrical conduits.

In the District Court it was held that the patented device was anticipated by the prior art; that, irrespective of this, the structure in question did not involve invention; and that, if it did, the claims in issue were not infringed by defendant's device.

The claims in issue on this appeal are Nos. 1, 2, 3, 4, 5, 6, 9, 10, 11, and 12. Claim 3 is typical of claims 1 to 6, inclusive, and claim 11 of claims 9 to 12. They read as follows:

"3. A conduit consisting of a helix of semiflexible material and a flexible material interwoven therewith, substantially as described."

"11. As a new article of manufacture, a helical coil of material having sufficient rigidity of structure to prevent collapsing under the usual conditions of use, and pliable or flexible material interwoven with the convolutions of said helical coil to impart strength to the structure in a longitudinal direction, substantially as described."

In the specification the patentee says:

"My invention relates to a flexible conduit for electrical conductors, my object being to provide a form of conduit which, while possessing the necessary rigidity and insulating properties, may be readily flexed or bent laterally to accommodate itself to the conditions of use, and, furthermore, to provide a conduit which can be manufactured at comparativly small cost."

Prior to the patent in suit rigid tubes, with suitable fittings for turns, had been employed for the installation of electric wires. The only flexible tube used for this purpose was one constructed according to a patent granted to Herrick July 21, 1891 (No. 456,271).

The conduit of the Herrick patent was made in three parts. The

inner part was a spiral strip of suitable material, having the turns of the spiral slightly separated. The second part consisted of a tape or strip wound about the exterior of the spiral to cover the spaces between the turns, the tape or strip being composed of some waterproof flexible material. The third part was a woven jacket or seamless tube having threads so introduced as to destroy its extensibility. The spiral afforded protection and insulation to the conductor, and, while furnishing the requisite rigidity against lateral pressure to which such structures were likely to be subjected during installation, it did not impair the necessary flexible quality of the conduit. The purpose of the nonextensible covering is said to be—

"in order that strain on the conduit in the direction of its length may not operate to separate further the turns of the spiral lining."

It is also suggested that:

"A protecting strip extending longitudinally of the spiral lining and folded around the same, with its edges overlapping, will render the conduit nonextensible, in which case an ordinary braided covering without longitudinal threads may be employed."

It is thus seen that the device of the Herrick patent presented means whereby, if strain was exerted on the conduit or covering in the direction of its length, the turns of the spiral lining would not be further separated; but the patent neither suggests nor provides means for preventing the further separation of the turns of the spiral in case strain is exerted on the end of the spiral instead of on the conduit or covering. It appears from the evidence that, in the installation of conduits constructed under the Herrick patent, the workmen sometimes removed the spiral lining intentionally, and sometimes accidentally, thereby destroying its insulating and protective qualities, and that, because of this, shortly after 1900, it was condemned by the Board of Fire Underwriters and went off the market. Later it was restored to use, the owners of the patent having devised means, not for interlocking the turns of the helical member so that they would not be further separated or the member removed by a strain upon it, but by inserting perforations at frequent intervals in the helix, thus weakening its structure so that it would be broken off, and only a short strip removed in case it was subjected to strain.

In the patent in suit provision is made for a helical member of semiflexible material, and the patentee declares:

That he has employed "the term 'semiflexible' with reference to the material used to indicate that property which the material should possess of being sufficiently flexible to permit of the same being bent into tube-like form, while having sufficient permanency of form to preserve the tube-like shape without undue tendency to collapse or flatten, as would be the case if the material were too pliable"; that "the term therefore contemplates any material capable of being bent into the proper form, and having sufficient rigidity of structure to preserve its form under the conditions of use"; and that "for the semiflexible element cardboard, fiber, metal—such as steel ribbon, wire, and the like—and * * * strips of cane or bamboo" may be used.

He also provides that the convolutions or turns of the helix should be "bound together or locked in a longitudinal direction by means of elements of pliable or flexible material interwoven or interconnected

with the successive turns or convolutions to impart longitudinal strength to the tube"; and he says that:

"For the pliable or semiflexible material used *to bind or lock the convolutions together* I may employ thread, yarn, wire, or any similar material lending itself to being readily interwoven with the semiflexible element."

And again he says in referring to this matter:

"In the specific embodiment of my invention, illustrated in Figs. 1, 2, 3, and 4 of the drawing, a strip *a* of semiflexible material is coiled into a helix, and a series of threads *bb* are interwoven therewith, the threads extending longitudinally *to securely lock the successive layers or convolutions together* and impart strength to the tube in a longitudinal direction."

For one form of his device the patentee provides a covering made of woven threads, or of threads braided together. And the reason why a braided covering may be employed, as well as one formed of woven threads, is stated as follows:

"In flexible conduits of the prior art the structure has been such that the covering has been relied upon to impart longitudinal strength to the tube, and it has therefore been necessary to employ for the covering threads woven together, with one series of threads extending circumferentially and another series extending longitudinally. Due to the fact that the tubelike skeleton of my construction possesses in itself longitudinal rigidity and strength, other forms of covering having little or no tensile strength may be employed."

From the foregoing it appears that the specification of the patent discloses means whereby the turns of the spiral are securely locked together, and separation of the turns, or extension of the conduit in a longitudinal direction, will be prevented, whether the conduit is constructed with or without an outer covering, and whether strain is exerted directly upon the helical member or upon the conduit constructed with or without a covering or jacket.

The claims in issue relate to the form of conduit disclosed in the specification for which no outer covering is provided, and it is contended on the part of the defendant that the structure of these claims is not an electrical conduit, but is a conduit or article of manufacture designed or intended to be used for a purpose other than inclosing and insulating electric wires. In support of this contention it relies in a large measure upon certain statements of the patentee in his specification. Fig. 2 of the patent is a drawing disclosing the structure covered by the claims in issue. At one place in his specification the patentee, in speaking of the structure disclosed by this figure, says, "Fig. 2 is an enlarged view of the *skeleton of the conduit*," and at other places he refers to it as the "skeleton," "the tubelike skeleton," "the tube," and "the tube-like structure," and says that any "preferred covering may be employed for the tube *to complete the conduit*." If this was all that the patent disclosed relating to this matter, we should be inclined to agree with the defendant that it was not intended the tubelike structure of Fig. 2 should be an electrical conduit. But further examination of the specification makes it clear that it was intended the structure of Fig. 2 should be an electrical conduit and should constitute one form of the invention, for the patentee says:

"The conduit [meaning the structure of Fig. 2] may be employed without the provision of an additional covering, as shown, for instance, in Fig. 2, al-

though I preferably provide an exterior protecting covering, as shown in the other figures."

It is also contended that none of the claims of the patent, whether in issue or not, are for an electrical conduit. This contention we regard as without merit. The title of the patent is, "Flexible Electric Conduit"; in the specification the patentee states:

That he has "invented a certain new and useful improvement in flexible electric conduits," that the "invention relates to a flexible conduit for electrical conductors, my object being to provide a form of conduit which, while possessing the necessary rigidity and *insulating properties*, may be readily flexed," etc., that "in one embodiment of my invention I have employed for the woof thin strips of cane and for the warp cotton thread or twine, and find this combination to be well adapted for the conduits on account of the *insulating properties* of the cane and the cotton," and that "where material as steel ribbon is used for the woof, wire may be used for the warp, or, preferably, cotton thread or twine, since the thread or twine passing across the inner and outer faces of alternate convolutions of the metal will form layers of *insulating material* upon the interior and exterior of the tube or conduit."

It is also contended that, inasmuch as the claims and specification do not specifically provide for the use of fireproofing and waterproofing compounds, a conduit constructed according to either of the forms disclosed in the specification would be impracticable and useless as an electrical conduit. But the record discloses that, at the time the application for the patent was filed, waterproofing and fireproofing compounds were well known in the art of making electrical conduits, and, inasmuch as the patent discloses that the forms of construction in question were intended for electrical conduits, we think that fireproofing and waterproofing compounds were impliedly included in the specification, though not specifically disclosed.

The position is also taken that, if the specification contemplates the use of waterproofing and fireproofing compounds, the structure shown in Fig. 2 is incapable of properly receiving and retaining the compound, and is therefore worthless as an electrical conduit. There was evidence in support of this contention. There was also evidence to the contrary, and that the structure is not only capable of being properly treated with fire and waterproofing compounds, but that it had actually been so treated successfully. We see no reason why the latter testimony does not state the fact correctly, nor, in view of the disclosures of the patent, any reason why the weft member may not be made of such size and the warp members of such number and size as to render the weave sufficiently close to properly receive and retain the compound, without rendering the interior surface of the tube unsuitable for the introduction of a conductor. The demonstrations made in open court lead us to believe that the interior of the plaintiff's device presents a sufficiently smooth surface to permit the ready introduction of wires.

If the device of the patent is novel and involves invention, the defendant further contends that, under the claims in issue, the plaintiff is limited to a construction in which the helical or weft member is the cane strip disclosed in the specification, and, thus limited, the defendant's device does not infringe, as the helical or weft member of its

device is a twisted paper fiber. But, in view of the disclosures of the patent, we fail to see why the patentee or his successors in title should be limited to the use of the cane strip for its helical member. In explanation of the term "semiflexible," employed in the claims to denote the character of the material from which the helix is to be made, and of the same term employed in the specification for a like purpose, the patentee states:

"I have employed the term 'semiflexible' with reference to the material used to indicate that property which the material should possess of being sufficiently flexible to permit of the same being bent into tubelike form, while having sufficient permanency of form to preserve the tubelike shape without undue tendency to collapse or flatten, as would be the case if the material were too pliable. The term, therefore, contemplates any material capable of being bent into the proper form and having sufficient rigidity of structure to preserve its form under the conditions of use. I may employ for the semiflexible element cardboard, fiber, metal—such as steel ribbon, wire, and the like—and * * * strips of cane or bamboo."

The mere fact that a twisted paper fiber had been previously used for a weft in making a flat fabric intended for roofing, and its use for this purpose had been disclosed in letters patent granted to Robinson September 16, 1852, No. 36,474, does not militate against the plaintiff's right to such a weft member, for the conditions of use under which it is employed are not the same. Here it is employed to maintain a circumferential rigidity to the tube against the conditions of use under which the tube is employed, while in the Robinson patent the structure was flat, and not of a tubular nature calling for circumferential rigidity.

In the defendant's device the turns of the helical member are securely locked together by interwoven, longitudinal strands which prevent separation of the turns and impart longitudinal rigidity to the structure. The defendant's expert admits that its conduit embodies the structure of all the claims in issue, and we think it infringes plaintiff's device, if that device is not anticipated and involves invention.

Is the plaintiff's device anticipated by the prior art, and does it involve invention? In this connection the defendant contends that flexible electrical conduits do not belong to a distinct art, and that it is entitled to go into the general art of weaving seamless tubular structures to show anticipation. It is true that seamless woven tubes were old, and that semiflexible helical weft members in seamless woven tubes and flexible warps interwoven with a semiflexible helical weft were old; but none of these structures were suitable to answer the purpose of a flexible electrical conduit. They comprise such articles as lamp wicks, garden hose, and suction hose, and we do not regard them as sufficient on the question of anticipation. Neither do we regard the device in suit as anticipated by the Herrick patent, which was the only flexible electrical conduit prior to the plaintiff's; it did not anticipate the latter for lack of means to securely interlock the helical turns so that they would not be removed when pressure was exerted upon the helix.

The remaining question, therefore, is whether by the introduction into this art of means for securely interlocking the turns of the helical

member and rendering them incapable of further separation against longitudinal strain, and by the same means producing a smooth lining for the tubing, the device of the patent performed a new function and accomplished a new and beneficial result. We have heretofore shown that, while the Herrick conduit was flexible, possessed the requisite qualities of rigidity against lateral pressure, and was capable of withstanding longitudinal strain when exerted upon the conduit or cover, it was lacking in the qualities necessary to withstand such strain when exerted upon the helical member, and that, because of the absence of this quality, the helical member was open to being intentionally or accidentally removed, or the turns separated, and that, if removed, the conduit lost its circumferential rigidity, and the conductor was deprived of the protecting and insulating qualities afforded by the helical member, and that, if the turns of the helix were only further separated, the diameter of the conduit would be lessened, rendering it difficult, if not impossible, of use for the introduction of a conductor.

The plaintiff's device overcame these difficulties, and presented means whereby, if the conduit was constructed with an outer cover, the helix would not be removed from the cover, or its turns separated by strain exerted upon it in a longitudinal direction, and further disclosed that a conduit could be constructed, without a cover, which would be nonextensible, and the turns of its helix would not be separated by strain exerted upon it in a longitudinal direction. In this respect, we think the plaintiff's device performed a new function, accomplished a beneficial result, and involved invention. The situation here under consideration does not differ in any material respect from that presented in Fitchburg Duck Mills v: Barrell, 214 Fed. 777, 131 C. C. A. 189, decided by this court May 20, 1914. At any rate, the circumstances are such that we do not regard the prima facie evidence of invention arising from the issue of the patent as overcome.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with the opinion passed down this day; and the appellant recovers its costs of appeal.

PUTNAM, Circuit Judge (concurring). While I concur in the result, I think that something further is necessary to make it plain why we undertake to reverse the District Court in what it decided with great attention and care. Its opinion contains some expressions indicating that the claims in the patent, if read literally, are to be construed to cover the whole art of conduits made for any purpose, provided they contain a helical transverse construction with a longitudinal binding thread. In reading the claims alone, such might be the effect; but the specifications are introduced with the words "flexible electrical conduits," and the product, whatever it is, is limited to such purpose according to the ordinary rules of construction.

It is not an uncommon conclusion that, while ordinarily a patented construction is infringed if applied to any use whatever, whether named in the claims or not, this is not a universal rule; but there are many circumstances under which a merely new application, especially with some change, is patentable. These cases are constantly occurring

in practice. The authorities abound in them. A striking example, with a sufficiently full discussion of the reasons involved, and with the necessary limitations, is found in the decision of this court in Heap v. Tremont & Suffolk Mills, 82 Fed. 449, 27 C. C. A. 316, decided on August 21, 1897.

The patent at bar, in view of the fact that what had preceded it had held the field so long and been so clearly inapt and awkward, is one of this class of cases, in view, also, of the fact that the patentee's adaptation was so simple and successful. It is true that the helical form of conduit was customary in all the arts, but it had a peculiar adaptation in meeting the strain called for in this device, and enabled the manufacturer to dispense with several awkward elements that had been before regarded necessary.

A device by Herrick had preceded the patent in suit. The District Court incidentally described what was done by the patentee as an improvement; but it spoke of it as merely structural, and therefore decided that it was competent for the respondent to rely on what was well known in the art of constructing flexible tubes, even if such tubes had not been applied to electrical nonconductors. Right here was the error on the part of the District Court, in view of the circumstances to which we have referred. Without going into the matter at length, it is enough for us to say that such is not the universal rule, and that it does not always apply under these circumstances. The patentee, indeed, accomplished in practice what, in our opinion, was an improvement; and thus he was in line with many other inventions to which we might refer.

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes