### NATIONAL METAL MOLDING CO. v. TUBULAR WOVEN FABRIC CO.

(Circuit Court of Appeals, First Circuit. November 14, 1917.)

No. 1288.

PATENTS ⊚⟹328—INFRINGEMENT—FLEXIBLE ELECTRICAL CONDUIT.
    A modified structure of defendant held, in a supplemental bill, not to infringe the Osborn patent, No. 652,806, for flexible electrical conduit, as construed in the original case.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit by the National Metal Molding Company against the Tubular Woven Fabric Company. On supplemental bill. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 248 Fed. 526.

Charles F. Perkins and William K. Richardson, both of Boston, Mass. (Carroll L. Perkins, of Boston, Mass., on the brief), for appellant.

Livingston Gifford, of New York City (William Quinby, of Boston, Mass., on the brief, for appellee.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The questions in this case arise under a supplemental bill, and they relate to flexible electrical conduits. The original case concerned the Osborn patent, No. 652,806, in which the question of its validity was at issue and the question of infringement as well. The patent was sustained, and it was held that the defendant's conduit, as then manufactured, infringed certain of its claims. The defendant thereafterwards modified its conduit, and, as claimed here, thereby eliminated the infringing feature.

In the original case there was an opinion by the Circuit Court of Appeals (227 Fed. 884, 142 C. C. A. 408), sustaining the patent and holding infringement, and the case was remanded to the District Court for further proceedings not inconsistent with the opinion, where there was an interlocutory decree in which the defendant was enjoined from constructing, using and vending any article embodying the invention described in the claims of the Osborn patent numbered 1, 2, 3, 4, 5, 6, 9, 10, 11 and 12.

Subsequently to such decree, and to the alleged modified structure of the defendant, the plaintiff instituted a contempt proceeding based upon the allegation that the newly made conduit did not differ in structure from the one originally complained of. The District Court declined to adjudge the defendant in contempt upon the ground that the character of the alleged new infringing structure raised a new question of infringement, and that the proper mode of procedure was upon a supplemental bill, and the motion that the defendant be adjudged in contempt was continued to await such proceeding, and in the event of such proceeding not being instituted within thirty days the motion for contempt was to be dismissed. This line of procedure was approved by the Court of Appeals (239 Fed. 907, 153 C. C. A. 35), upon the theory that it was properly open to the District Court in its discretion to proceed summarily upon the ground of contempt if it deemed the new structure to be only colorably different from the one formerly at issue, and if it deemed a supplemental bill as the method best adapted to do justice, that it might direct the question involved to be presented by supplemental bill.

It results from this that the particular question before us is whether the defendant's modified or changed article of manufacture is an infringement of the Osborn claims enumerated, and as sustained and construed by the Court of Appeals in the original case. It becomes necessary, therefore, to consider the theory upon which the Osborn patent was sustained, and the intended scope of the claims involved as explained in the decision sustaining the patent and holding infringement.

The opinion of Judge Brown under the supplemental bill in the court below is so exhaustive, analytical, and convincing, not only in respect to what was decided by the Court of Appeals, but in respect to the prior art and the new question of infringement, that very little remains to be said. It may be observed, however, that the fundamental and leading idea of the decision below was that the Osborn patent and structure contemplated different materials, one to be semiflexible and the other flexible, and that while the Osborn patent device embodies two elements only, that "the defendant's structure is of three, all essential, and all co-operating under a principle of combination different from that of Osborn's structure," the defendant's third element, consisting of the step involved in stiffening its loosely woven and soft tube of one material by successively immersing it in waterproofing and fireproofing compounds. The defendant in argument and on its brief deals with its new conduit as embodying only two steps; first, that of manufacturing through loosely weaving on a circular loom, using for its wefts and warps a single material consisting of cotton—that of soft twist cotton yarn—and the second step as involving the saturation of the conduit of the first step with waterproofing and fireproofing compounds. But the question whether the defendant's completed conduit involves two or three steps or elements is quite immaterial, if it results that its means of manufacture and its means of properly stiffening are substantially different from the means described and employed by Osborn.

Now, what did the Court of Appeals decide in respect to the Osborn patent and its infringement? It is apparent that that decision was based upon the idea that Osborn, in describing his device, was for his helix, dealing with a material sufficiently flexible to yield to tube formation, and sufficiently flexible to yield to turns and angles when subjected to use, and yet sufficiently rigid and nonflexible as to be noncollapsible under such use, and that for his material to resist longitudinal strain and extension, that he was dealing with a pliable or flexible material so interwoven or interconnected with the turns of the semiflexible helix as to accomplish the desired result. Indeed, Osborn, in his specification, describes the term "interwoven," as employed, as contemplating association of the binding material with the outer and inner faces of the circumferentially extending elements or with the spaces between the same, to impart strength to the structure in a longitudinal direction, and for the pliable or flexible material used to bind or lock the convolutions together he enumerates thread, yarn, wire or any similar material lending itself to being readily interwoven with the semiflexible element. He speaks of the convolutions of the helical coil form, as it were, the woof threads, or elements of the fabric, and of the elements of pliable material extending longitudinally as constituting the warp threads or elements, and he speaks of the two series of elements as being interwoven to form as a whole a tubelike structure or fabric possessing a necessary resistance to collapsing and the necessary longitudinal rigidity, while being readily flexed due to the relative movement permitted between the adjacent turns or convolutions. And he says:

"My structure thus comprises, in effect, a series of woofs extending circumferentially, and a series of warps extending transversely thereto to interlock and bind the same together into a tubelike structure."

The means thus described necessarily require, in the manufacture of the article intended, different kinds of material, or at least materials performing different functions, and it is plain that the original decision of the Court of Appeals sustaining the patent was alone upon the idea of the conception of such means, and a description of such a structural combination of the materials, as would accomplish the desired result, and not permit of the removal of the helix with the consequent loss of its insulating qualities and its useful circumferential rigidity.

The defendant in its new conduit, so far as its structure, or structural step, is concerned, does not at all employ the idea of material sufficiently flexible as to permit of being bent or twisted into spiral form and of yielding sufficiently to permit of use around the angles of walls and ceilings, and yet sufficiently rigid to be noncollapsible under such use, and so adjusted as not to permit of the removal of the helix. The defendant in its new conduit apparently aims to accomplish all these results through substantially different means.   Quite independent of the element of stiffening, so far as the structural step is concerned, it takes the old principle involved in circular loom weaving, which produces tubing like that of the garden hose, and using a single material consisting of soft absorbent cotton warps and wefts, and working quite within the scope of the old art, produces a soft and flexible tube or conduit which it subjects to treatment by immersing it first in waterproofing, and second in fireproofing, compounds.   The compounds, being in a melted state, are applied to the exterior without penetrating to the interior, and when cooled bind the warp and wefts together, thereby stiffening them against lateral pressure and collapse, and thereby uniting them against longitudinal strain; and these results of stiffening and strengthening are thus accomplished without loss of the required flexibility, together with the result that there is no helix susceptible of being removed.

It is true that the Court of Appeals alluded to fireproofing and waterproofing compounds in connection with the Osborn patent; but it is not understood that the allusion was to compounds, as an element of the Osborn invention, but to something old in the art, bearing upon the question whether Osborn's was an invention for an electrical conduit and something which might, through implication, be read into the patent as old means contemplated for insulating purposes.   Thus the observation of the Court of Appeals in this respect was quite independent of the idea of the stiffening means and elements described and included in Osborn's invention and structure.

Neither the patent nor the opinion in the original case deals with the disparity between the sizes of the wefts and warps as an essential element of the Osborn invention; nor does Osborn in his invention make any point in respect to either the weft or woof strands being susceptible of waterproof or fireproof absorption.   Therefore, the question of infringement under the supplemental bill cannot be made to turn upon such grounds.

In Osborn there is no hint suggesting the employment of liquid compound materials, which, when applied and cooled, should perform the function of stiffening a woven cotton tube to be used as a conduit in electric wiring, but not to the degree of excluding the necessary flexibility, and yet to the degree of creating a rigidity sufficient to prevent collapse when the tube should be subjected to use; nor was there any suggestion that compounds so applied would perform the function of creating the strength required to resist longitudinal strain.

The required stiffening of the Osborn conduit is inherent and is perfected in Osborn's contemplated structure, without any regard whatever to subsequent treatment by compounds as a stiffening element, while in the defendant's new conduit the required stiffening is not at all involved in the structural process, but results altogether, or at least in every substantial sense, through subsequent treatment by old and different materials from those described and used by Osborn for structural stiffening.

In conclusion, we think the defendant produced its new conduit by combining elements old in the art under conditions which differ substantially from Osborn's conception, and by employing means which are quite independent of the means and combination which Osborn described. Osborn was not a pioneer inventor, and we do not think his claims should be so broadly construed as to include the defendant's new conduit.

The decree of the District Court is affirmed, with costs of this court.