BECKWITH BOX TOE CO. v. GOWDY et al. (three cases).

(District Court, D. Massachusetts. August 5, 1916.)

Nos. 628–630.

1. PATENTS ⬅117—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT.
    The issuance of a patent to one named as assignee of the applicant is prima facie evidence of title in such assignee.
2. PATENTS ⬅328—INVENTION—PROCESS OF LASTING SHOES.
    The Davis patent, No. 749,267, for improvement in the art of lasting boot or shoe uppers, the object of the described process being to form a box toe is void, as not distinctly disclosing anything novel and patentable over the process as previously practiced.
3. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—BOX TOES FOR SHOES.
    The Butterfield patents, No. 1,070,406, for a method of making stiffened foreparts of boot and shoe uppers, and No. 1,124,694, for a box toe, the product of such process which by using a stiffening composition in the fibrous toe blanks that may be softened sufficiently for lasting merely by the application of a degree of heat not injurious to leather, were not anticipated and disclose a meritorious invention, which effects a saving in time and cost of manufacture over old processes; also *held* infringed.
4. PATENTS ⬅27(1)—ANTICIPATION—PATENTS IN NONANALOGOUS ARTS.
    That a patentee has taken an idea from a prior inventor does not necessarily negative invention, where he has adapted it to perform a different function in a nonanalogous art.

In Equity. Three suits by the Beckwith Box Toe Company against one Gowdy and others. On final hearing. Decree for defendants in first suit, and for complainant in second and third suits.

Benj. Phillips, Alfred H. Hildreth, and W. Orison Underwood, all of Boston, Mass., for plaintiff.

Albert M. Rollins, of Brocton, Mass., and Geo. P. Dike, of Boston, Mass., for defendants.

DODGE, Circuit Judge. In each of these suits the defendants are charged with infringement of a different patent alleged to belong to the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff company. The patent in question in the first case is No. 749,-267, issued January 12, 1904, to Oscar C. Davis, assignor of one-half to George E. Keith. In the second case it is No. 1,070,406, issued August 19, 1913, to Frank E. Butterfield, by Eugene M. Butterfield, administrator of Frank E., deceased, assigned to the plaintiff company. In the third case it is No. 1,124,694, issued January 12, 1915, to Frank E. Butterfield, by Eugene M. Butterfield, administrator, assigned to the plaintiff company.

[1] A preliminary question is as to the sufficiency of the plaintiff's proof to establish its title to the three patents sued on. Assuming title in Davis and Keith to the Davis patent, subsequent successive assignments from them and from their assignee have vested that title in the plaintiff; but to show that Davis ever assigned half of it to Keith, there is only the patent itself, issued as above stated. Also, for its title to the two Butterfield patents the plaintiff relies on the patents themselves, issued as above stated to it as assignee, without producing any assignment to it of either, before issue, by Frank E. Butterfield or his administrator. The defendants contend that, in the absence of the above-mentioned assignments from the applicant, the proof is not complete. My ruling must be that the patents themselves are prima facie evidence of title in the assignee named. Walker on Patents (4th Ed.) § 495; Whitcomb v. Coal Co. (C. C.) 47 Fed. 655; U. S., etc., Co. v. Butez (C. C.) 140 Fed. 556; Money Weights, etc., Co. v. Toledo, etc., Co., 199 Fed. 905, 906, 118 C. C. A. 235. It is to be presumed, in view of Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504, Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948, that the patent office had before it assignments sufficient to pass title from the applicant to the assignees named, until the contrary is shown. I find nothing requiring a different conclusion in Wende v. Horine (C. C.) 191 Fed. 620, cited by the applicant, which decides only that an applicant may sue in his own name under Rev. Stats. § 4915 (Comp. St. 1916, § 9460), notwithstanding that he has assigned his application. Paine v. Trask (C. C.) 56 Fed. 231, 233, decided in this circuit in 1892, and Eastern, etc., Co. v. Keystone, etc., Co. (C. C.) 164 Fed. 47, consider only what proof is requisite of the execution of an assignment after issue. I hold, therefore, that the plaintiff has made sufficient proof of its title to each of the three patents sued on.

The Davis patent, 749,267, is for "art for lasting portions of boot or shoe uppers." It has three claims, all in suit. The Butterfield patent, 1,070,406, is for a "method of making stiffened fore parts of boot and shoe uppers." It has only one claim. The Butterfield patent, 1,-124,694, is for a "box toe and blank therefor." It has six claims; 1 and 6 only are in suit.

[2] 1. The Davis patent is for a process. Each claim begins with the words, "That improvement in the art of lasting boot and shoe uppers which consists in"—after which the various steps of the process claimed are stated, in substance as below:

(Claim 1) Incorporating in the unlasted upper a blank made of felt treated with a waterproofing stiffening fluid.

Lasting the upper to form or mold the blank.

Permitting the blank to dry, whereby its stiffness is increased.

(Claim 2) Simultaneously lasting the upper and a stiffener blank made of felt saturated with a waterproof stiffening material in solution, so that the blank is soft and flexible, thus forming or molding the blank while the latter is soft.

Subsequently allowing the stiffening material to harden and stiffen the lasted and formed upper.

(Claim 3) Saturating a stiffener blank made of felt with a soluble waterproof stiffening material.

Incorporating the stiffened blank in an unlasted upper.

Dissolving the stiffening material of the blank by means of a solvent to soften the blank.

Lasting the upper, thus forming or molding the blank while the latter is soft.

Subsequently allowing the stiffening material to harden and stiffen the lasted or formed upper.

The defendants do not dispute that they have made and sold felt box toe blanks, stiffened with soluble waterproof stiffening fluid, namely, shellac dissolved in alcohol; and the evidence shows that they have sold such blanks, knowing them to be intended for use in the manufacture of box toe shoes, by incorporating them into the uppers of such shoes, softening them before lasting by the application of alcohol holding more shellac in solution, and drying the uppers thus containing them, after the lasting operation. This was contributory infringement of the Davis patent, at least of its third claim, if said patent and claim are valid.

The defendants say the patent is invalid, because it purports to cover two alternative processes without distinction—one in which the waterproof stiffening material or fluid is applied to the felt blank and the shoe lasted while the felt is still soft by reason of such application, (claims 1 and 2); another in which the felt is dried after such application and subsequently resoftened by further application of a like material or fluid before lasting (claim 3). This is said to be failure to comply with Rev. Stats. § 4888 (Comp. St. 1916, § 9432), in that the improvement claimed is not particularly pointed out and distinctly claimed; and a failure which prevents the public from knowing just what the improvement in the art of lasting, etc., is, which the patentee claims to have invented.

Read by themselves, claims 1 and 2 describe only a process familiar in the art of lasting long before Davis' alleged invention. This the plaintiff is understood to admit; at any rate, the evidence shows it to be true. But the plaintiff says that according to the specification, the stiffened and waterproof blank is to be dried before incorporation in the upper and thereafter softened again before being lasted; that claims 1 and 2 must therefore be so understood; and that in any event claim 3 must be held valid, whether the other two claims are valid or not, because it requires "the stiffened blank" to be incorporated in the unlasted upper and its "stiffening material" to be then "dissolved," so as to soften the blank before lasting. This contention requires close scrutiny of the specification.

It is to be observed that in the specification the "chief object" of the invention is stated as below, and that no other object is stated:

"To provide a boot or shoe upper with a box toe which is capable of being freely and accurately conformed to the toe portion of the last by the last-

ing operation, and of thereafter becoming relatively stiff, so as to retain the form imparted to it, and which shall, when stiffened, possess such a degree of elasticity or resilience that the toe portion of the upper will not be liable to be permanently distorted or indented by ordinary external pressure applied in such direction as to force the toe portion of the upper inwardly."

The above object was attained, so far as I can see, by the previous familiar method above referred to of applying the waterproofing stiffening fluid to the blank after its incorporation, just previous to the lasting. Nothing essential to its attainment seems to me added by the specification.

The patentee next states that his invention consists "in the herein described improvement." Precisely what that improvement is, is left to be gathered from the above and from the description then following; there is no express language which distinctly points it out.

The description is only of "the preferred mode of procedure." According to it, the stiffening blanks are to be cut from a sheet of felt. That use of this particular material was new with Davis is not suggested, and the evidence proves the contrary. The felt is to be saturated with the waterproof stiffening material, preferably before the blanks are cut from it, and allowed to harden; the only advantage thereby secured being, so far as the specification shows, that a blank so stiffened can be skived or scoured in a machine, to reduce its margin. That stiffening it for such prupose is, or could be, claimed as a patentable improvement, is not suggested. The blank "with its hardened stiffening" is to be next subjected to the action of a solvent, and, after that, either to be incorporated, so softened, in the upper, in ways suggested, or to be incorporated first and then dipped into the softening solvent. Lasting is to follow while the blank is soft. The lasted upper is to be dried "to again harden the stiffening material and cause it to impart the relative stiffness desired to the box," or, in other words, to accomplish what, according to the disclosure, is the chief and only object of the invention, as has already appeared.

Lastly, the inventor states it to be obvious that stiffening material in solution may be applied during lasting, to increase the stiffening effect desired for his above-stated purpose.

I can find no distinct indication in the specification that the drying of the blank or of the felt out of which it is cut after saturation, so that it may be softened again just after or just before incorporation and before lasting, is disclosed as an improvement invented by Davis. And in claim 3 the utmost indication of anything of the kind is in the words "incorporating the stiffened blank in an unlasted upper," which according to the disclosure, as has appeared, is only one way of practicing the invention supposed to be disclosed; incorporation of a softened blank being just as much a way of practicing it. If the disclosed improvement upon existing practices is to be taken as consisting in drying as above, I am unable to believe it a patentable improvement. It seems to me to involve only mechanical skill in adaptation, not inventive thought, whatever the practical advantages secured by it. There has been no proof that these in themselves are of such importance as would assist the claim that it is a patentable improvement.

For want of any sufficiently distinct statement of what was new with the patentee in the process described, which in its declared purpose and essential features is only that previously familiar; and because no detail in which it can be said to differ seems to me to rise to the dignity of patentable novelty, I am obliged to regard the patent as invalid. But, conceding its validity, equitable reasons appear why these defendants ought not now to be treated as infringers upon it.

From its issue in January, 1904, until the present bill was filed March 11, 1915, the defendants have been constantly making and selling the stiffened felt blanks above mentioned, for use in the above manner, and have been developing and extending their said business; all this with the knowledge of the owners of the patent. Neither of the successive owners has ventured meanwhile to interfere by legal proceedings. There has not, however, been acquiescence for 11 years in the defendants' above doings; on the contrary, nearly 2 years after the patent issued the defendants entered into a license agreement with the original patentees, to continue, unless abrogated by either party, according to the agreed provisions, during the unexpired term of the patent. In this agreement the defendant acknowledged previous infringement and agreed to pay stipulated monthly royalties to Davis and Keith while the agreement remained in force. It was dated December 14, 1905, and the defendants paid royalties under it until April, 1907, after which they declined to pay on the ground that others were infringing the patent as much as they were without being called to account. Demand for payment thereupon made, first by Davis and Keith, afterwards by their attorneys, was ignored by the defendants; but Davis and Keith had taken no action to enforce any rights claimed either under the agreement or under the patent up to the time of their transfer of the patent to the plaintiff, March 12, 1914; nor did the plaintiff take any action against the defendants thereafter until March 11, 1915, as above. Eight years of acquiescence is thus the most that the defendants can assert; but, under the circumstances, I must regard it as enough to require the above conclusion.

The license agreement is not now in force; the plaintiff having repudiated it, in any event, by bringing this suit for infringement of the patent. But that it had been long before treated by both parties as abrogated seems to me the only reasonable conclusion from the fact that Davis and Keith have acquiesced so long in its repudiation by the defendant upon the ground that unlicensed persons were being permitted to defy the patent without objection. That it estops the defendants in this case is not claimed. It affords the plaintiff, at most, only evidence of a former admission of validity in the patent. Tate v. Baltimore, etc., Co., 229 Fed. 141, 143 C. C. A. 417.

The above requires dismissal of the bill in the first of the above suits (No. 628) and there may be a decree in that case accordingly.

[3] 2. The Butterfield patent, No. 1,070,406, is also for a process, viz., "Method of making stiffened foreparts of boot and shoe uppers." The Butterfield patent, No. 1,124,694, is for "box toe and blank therefor," being the box toe produced by said process and the blank prepared for use in it; the latter being claimed as a new article of manu-

facture. The first patent has only one claim; the second has six, but only claims 1 and 6 are in issue. For most of the questions arising under either of these patents it will be sufficient to consider the disclosure made in the first patent. The object of the invention is stated in the same terms in both, as follows:

"To enable a properly stiffened and durable fore part to be produced more perfectly and quickly than heretofore, and to reduce to a minimum the cost of producing a stiffened upper forepart."

The above object is to be accomplished, according to the disclosure, by saturating a box toe blank of fibrous absorbent material, preferably felt, but capable, whatever the material, of absorbing a fluid stiffening composition. The composition is to be adapted to be softened by a degree of heat which will not injure the upper leather. An alcohol solution of shellac, eight pounds to the gallon, mixed with a solution of borax in hot water, in the proportions 1 ounce of borax to two ounces of water, is indicated as suitable for the purpose. The saturated blank, dried so as to be relatively hard and stiff, is to be assembled, with the other parts forming the upper, in suitable relation to the last. They are to be then heated to a degree not high enough to injure the leather, preferably from 110 to 120 degrees F. Lasting is to be done while the blank is in the softened condition thus produced. After lasting, the box toe is to be allowed to stiffen by cooling. It is further directed that the stiffening composition be capable of resisting the heat of the body, so as not to be softened by ordinary use; also that it be practically insoluble in water.

Only one of the claims in suit, however, contains mention of this last requisite. The blank covered by claim 6 of the second patent is to be, among other things, "unaffected by moisture."

The single claim of the first patent is for the method of making stiffened foreparts which consists in:

Incorporating in the unlasted upper a stiffener blank, comprising absorbent, fibrous material containing a stiffening composition or material adapted to be softened by a degree of heat not injurious to leather and to be stiffened by cooling.

Heating the blank to soften it.

Lasting the upper while the blank is heated and soft.

Allowing the box toe to stiffen by cooling.

The above process varies from the previously familiar practice, or from anything described in the Davis patent before considered, in that the stiffened blank is to be softened by heat, instead of by a solvent, and not by heat in general, but heat within a defined range of temperature; i. e., heat above that produced by the wearer's body, but less than that which will injure leather, and correspondingly in that the stiffener used is to be such as will not soften below the former, but will soften below the latter, temperature. By this method of softening the drying necessary after a softening solution has been used is dispensed with, and an advantage in time and cost of manufacture is secured.

The defendants fail to satisfy me that this is not an improvement involving invention, patentable to the first inventor. I am unable to

agree with their contention that nothing beyond good judgment and skill in selection of material were involved in devising it. Its commercial value is fully established by the evidence.

The defendants say it was anticipated. They rely here upon previous practices testified to of softening shellac stiffened blanks by the use of hot water or of steam; also upon several prior United States patents, principally that to Graber, No. 691,462, January 21, 1902, a patent not cited in the Patent Office proceedings upon the Butterfield applications.

The only use shown of hot water for softening stiffened blanks was by dipping them into it before assembling and lasting the upper; the blanks so stiffened having been stiffened with shellac in solution only, uncombined with any substance adapted to vary or regulate its softening point. The water was used to soften, not only the stiffening, but the entire blank, when not uniformly stiffened, as was often the case; and drying after lasting was apparently involved. How steam was used did not distinctly appear, the only testimony about its use coming on cross-examination from one of the plaintiff's witnesses; but whether it was steam, or heat produced by steam, that was used, no adaptation of the blank to soften within a given range of temperature was shown.

As to the Graber patent, it belongs to an art not very closely analogous, being for a "composition for stiffening fabrics," in order, as the inventor declares, to make them waterproof, antiseptic and adapted for use for a variety of purposes. The fabric, saturated with a described composition, stiffens when dry, is then waterproof and antiseptic to a high degree, and, heated, may be given any desired shape, in which it will stiffen when cooling. The uses suggested for fabrics so stiffened are splints for surgical bandages, stiffening for garment lining, roofing material, pliable fabric for surgical supporters and braces, and lining for boots and shoes, as well as garments. The ingredients of the stiffening composition, in proportions by weight as below, which proportions may be varied according to the density and degree of stiffening desired, are:

Ethylic alcohol .......................................................... 192
Lac (shellac) ............................................................ 128
Ricinolein (castor oil) .................................................... 2
Borate of soda ............................................................ 2

Although in the above composition there is only about half as much shellac per gallon as in the Butterfield composition, and a small proportion of castor oil not therein found, it will stiffen felt box toe blanks sufficiently for lasting (or can be made to do so with slight variation), and will also soften at a temperature low enough to permit their use in the Butterfield process, but not low enough to soften in ordinary use, according to the defendant's uncontradicted testimony.

[4] I do not find in Graber's patent any sufficient indication of an intent on the inventor's part to adapt his composition for stiffening box toe blanks, or for the production in fabrics stiffened with it of the degree of rigidity requisite for that purpose. The nondrying oil which distinguishes his from Butterfield's composition, and which must be

present in some substantial quantity in order to keep the composition within the patent, however its proportion be varied relatively to the other ingredients, and the suggested use of his composition for producing pliable fabric, forbid the conclusion that such rigidity was one of his objects. I am therefore unable to accept the defendants' contention that Butterfield describes only a new use of Graber's invention. If Butterfield can be said to have made any use of the idea disclosed by Graber, the function which he adapted it to perform in the art of producing box toes was to my mind sufficiently new to prevent Graber's patent from being regarded as an anticipation. Forsyth v. Garlock, 142 Fed. 461, 73 C. C. A. 577; Fitchburg Duck Mills v. Barrell, 214 Fed. 777, 131 C. C. A. 189. And if Graber's patent does not anticipate the patents in suit, none of the other patents upon which the defendants rely can in my opinion be regarded as anticipations; nor is discussion of them in detail considered necessary.

The felt blanks made and sold by the defendants under the name of "Victor Box Toe" (Defendants' Exhibit B) were sold, as they knew, to be incorporated in box toe shoes by Butterfield's patented process. The composition used by the defendants to stiffen them. or at least some of them, consisted of shellac, resin, and alcohol. In some cases reclaimed shellac was used, which has a lower melting point than ordinary shellac; but the difference does not appear to be of importance for the purposes of the case. Nor does it seem to me that the rosin used by the defendants, instead of the borax specified in Butterfield's preferred formula, can substantially differentiate their composition from that which Butterfield described. If these conclusions are right, contributory infringement of the claim in suit is proved in No. 629, and infringement of both claims in suit is also proved in No. 630. In those cases there may be decrees accordingly.