## ELECTRIC AUTO–LITE CO. v. P. & D. MFG. CO., Inc., et al.

### No. 477.

Circuit Court of Appeals, Second Circuit.

July 8, 1935.

Braselton, Whitcomb & Davies and Ward, Crosby & Neal, all of New York City (Edmund B. Whitcomb and H. O. Ernsberger, both of Toledo, Ohio, Joshus Ward, of New York City, and Carl F. Schaffer, of Toledo, Ohio, of counsel), for plaintiff-appellant.

Kenyon & Kenyon, of New York City (Schechter, Lotsch & Sulsberger, Theodore S. Kenyon, John L. Lotsch, and W. Houston Kenyon, Jr., all of New York City, of counsel), for defendants.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The plaintiff and defendant both appeal from the decree entered below. Plaintiff appeals from so much as dismissed the bill for noninfringement of five "Igniter Patents." The court found each of these patents valid and owned by the plaintiff. Plaintiff also appeals from that part of the decree dismissing the bill as to the Wollenweber patent, No. 1,669,888, for failure of proof of title; also from a dismissal of the bill in its entirety as against the individual defendants, and the refusal of an accounting. The defendant appeals from that part of the decree enjoining the corporate defendant from conduct held to have been unfair competition; holding it also for infringement of the "AL" trademark and enjoining the use of the mark it uses. The plaintiff has not appealed from that part of the decree holding that defendant did not infringe the registered trade mark "Auto-Lite." Defendant also appeals from that part of the decree dismissing without prejudice, instead of upon the merits, the charges of infringement of the Wollenweber patent.

Plaintiff manufactures and supplies electric ignition systems used in automotive engines, and sells complete igniters, generators, and incidental equipment of various requirements and specifications to its customers. In its business, it also sells repair and replacement parts to car owners through service stations and garages. The defendant and its predecessor have been in business since 1920, and have manufactured and sold to jobbers for distribution, through service stations and garages, to car owners a line of repair and replacement parts. It supplies parts of all kinds and makes of ignition systems, new and old. Defendant's business also consists, in part, of the sale of replacement parts for igniters, generators, and motors manufactured by the plaintiff. It does not make or sell complete igniters, generators, and motors nor the heavy and durable parts thereof. It sells replacements only for parts which wear out and which are detachable, and for which there has been a substantial demand.

The defendant has been enjoined from using the words "to fit Auto-Lite" or any abbreviation thereof in connection with the sale or advertising for sale of electrical equipment or parts thereof, or from representing or stating that parts manufactured and offered for sale, or sold by it, fit devices or apparatus supplied by the plaintiff; from stating or representing that parts manufactured or offered for sale by defendant may be used for or are intended to replace plaintiff's parts; from advertising or in any way using plaintiff's part numbers to identify parts manufactured and sold or offered for sale by the defendant; from using a circle around the letters "P & D" or any other mark deceptively similar to plaintiff's trade-mark "AL" in a circle; from selling parts for repair or replacement of corresponding parts in devices originally manufactured by plaintiff except upon the express condition that a proposed substitution of such defendant's part for such plaintiff's part be made known to the ultimate purchaser or user.

The corporate defendant had been preceded in business by the individual defendants Piffath and Danziger, who later incorporated the business. They have trade-marked their merchandise "P & D." They maintain a factory and warehouses in the United States and Canada and publish a catalogue, distributing annually some 30,000 copies. They advertise extensively in this way and also by means of billboards. Their cartons, packages, and displays are distinctively marked with the "P & D" trade-mark, the corporate name and address, and its own code numbers of the repair parts therein contained. It distinguishes its various parts from each other by distinctive numbers as "AU–1" for a breaker arm. It uses the phrase "to fit Auto-Lite." It has done so continuously since 1926 in its catalogues in selling the repair parts adapted for use in igniters of plaintiff's manufacture. The court below held there was no infringement of the registered trade-mark "Auto-Lite," and the sole question here as to this is whether the use of the name is fraudulent or misleading as to origin. Defendant's use of a circle around its "P & D" initials began a year before any use is shown by the plaintiff of a circle around its "AL" initials. There was no evidence of fraudulent or deceptive conduct by the defendant. On the contrary, it has conducted its business to the plaintiff's knowledge in the manner described for more than ten years. There was no evidence to show any purchaser has been deceived by the use of the circle around the initials "P & D," either in direct dealings with the defendant, or in any purchase from a dealer or garage man; nor is there evidence to show that any particular feature of the shape, color, form, or appearance of the plaintiff's parts is nonfunctional, or that any nonfunctional feature of appearance of plaintiff's parts is relied upon by the public to distinguish their source or origin. Nor is it shown that any car owner or mechanic has been deceived or misled by the defendant's use of the phrase "to fit Auto-Lite" or by its use of plaintiff's code numbers in parentheses after its own code numbers in the defendant's catalogue. Indeed, no car owner or mechanic could reasonably be deceived as to the source or origin of the goods advertised in the catalogue. There was no evidence of palming off the defendant's goods for those of the plaintiff in the sale of its products. There are no questions of trade-mark infringement here involved. The question is whether the defendant's use, in its catalogues and other advertisements, of the phrase "to fit Auto-Lite" and the representation it implied throughout its catalogue that the parts so designated are of the correct size to replace plaintiff's parts in plaintiff's igniter equipment, is unfair or deceptive. There

is no deception or unfair competition in copying a part of an unpatented article and selling it as such. Columbian Art Works, Inc., v. Defiance Sales Corp., 45 F.(2d) 342 (C. C. A. 7); Deering Harvester Co. v. Whitman & Barnes Mfg. Co., 91 F. 376 (C. C. A. 6). It is not unfair to use the name of a well-known article and label a repair part if it be used in a fair way and simply to indicate that the part is made to fit the article. Therefore the use of the phrase "to fit Auto-Lite," and reference to the plaintiff's corresponding numbers which describe the parts, was permissible. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144; Bender v. Enterprise Mfg. Co., 156 F. 641, 17 L. R. A. (N. S.) 448, 13 Ann. Cas. 649 (C. C. A. 6); Stevens Linen Works v. William & John Don & Co., 127 F. 950 (C. C. A. 2); Magee Furnace Co. v. Le Barron, 127 Mass. 115; Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 135 F. 625 (C. C. A. 6).

■ If it be true, as asserted, that as soon as the plaintiff put a part on the market the defendant copied it in every detail and competed with the plaintiff in its sale, the defendant still would not be liable for unfair competition. It always marked the repair parts put out by it with its trade-mark. The evidence discloses that invariably every feature of the plaintiff's parts which are copied by the defendant is functional and necessary to the practical operation of the part. The parts are utilitarian in every detail and do not contain any ornamental features. Under these circumstances, it cannot be said that the defendant indulged in unfair competition by selling parts which look like those of the plaintiff's manufacture. No rule of law forbids a manufacturer from copying the features of the article which are essential to its use. Plaintiff has not shown that there is any feature of the part manufactured by it which is not necessary for the proper operation of such part. Therefore there was no unfair competition in manufacturing copies of such parts. A. C. Gilbert Co. v. Shemitz, 45 F.(2d) 98 (C. C. A. 2); Luminous Unit Co. v. R. Williamson & Co. (D. C.) 241 F. 265; Marvel Co. v. Pearl, 133 F. 160 (C. C. A. 2). The wrong in unfair competition consists of the sale of goods of one manufacture as those of another, but where, as here, the defendant has conducted its business so as not to palm off its goods as those of the plaintiff, there is no unfair competition. Krem-Ko Co. v. R. G. Miller & Sons, Inc., 68 F.(2d) 872 (C. C. A. 2); Ely Norris Safe Co. v. Mosler Safe Co., 62 F.(2d) 524 (C. C. A. 2). The only similarity of the defendant's trade-mark to that of the plaintiff is that a circle is drawn around the defendant's "P & D" initials, and a circle is drawn around plaintiff's "AL" initials. The defendant appears to have started first in using the circle. The plaintiff's trademark was registered in 1927; the defendant's predecessor, the partnership, began the use of the circle in 1926. No evidence points to deception and it cannot be reasonably claimed.

■ The five igniter patents are charged with being contributorily infringed. (Moses, No. 1,306,116; Moses, No. 1,383,229; Schwarzmann, No. 1,482,204; Gilchrist, No. 1,676,185; Patterson, No. 1,703,319.) The court found that the patents were valid but not infringed. The defendant's appeal seeks a reversal of the holding of validity. We need not pass upon the validity of the patent for we think they are not infringed. The defendant never made or sold a completed unit or device covered by any of these five patents. The parts manufactured and sold by the defendant were in themselves old in the art and not covered specifically by any claim of the patent, and cannot reasonably be said to distinguish the invention for which the monopoly was granted. A purchaser of a car having an ignition system made pursuant to any of these patents was entitled to have it repaired when necessary or replaced as to any of the parts in issue, in order to enjoy the continued usefulness of his ignition system. The car owner could repair or replace the part and would not be guilty of infringement if he did so. In like manner, he had the right to obtain the necessary part when his own need therefor arose. The parts which the defendant sells are: (1) Breaker arms; (2) contact screws or brackets; (3) springs; (4) condensers; (5) rotors; (6) caps; and (7) coils. None of these parts is the essence of the inventions sued upon, nor do any constitute the part which serves to distinguish the invention, marking in itself the advance over the prior art. When the part supplied is not a component of the patented combination, there is no infringement. Motion Picture Patents Co. v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61

L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Gillette Safety Razor Co. v. Standard Razor Corporation, 64 F.(2d) 9 (C. C. A. 2). In selling its ignition apparatus, the plaintiff did so expecting the car owner to have service during the life of the car and upon the implied understanding that the car owner is entitled to repair the same by replacing parts. Indeed, the ignition apparatus is so designed and built as to make it possible to quickly and simply detach, for replacement purposes, the parts referred to and thus to meet the demands of wear or destruction. In selling parts which enable the car owner to make such repairs, the defendant is protected by the car owner's implied right so to do. Moreover, it has long been recognized that unpatented components of a patented combination, which wear out quickly as compared with the life of the combination as a whole, may be replaced without infringement. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; Gillette Safety Razor Co. v. Standard Corporation, supra; Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 198; Thomson-Houston Electric Co. v. Kelsey Electric Ry. Co., 75 F. 1005 (C. C. A. 2). The defendant is not shown to have done more than sell its parts to the proper channels of distribution best adapted to supply them to the car owner. The record discloses no sales to infringers.

 The Wollenweber patent, No. 1,-669,888, is sued on for direct infringement. The court dismissed the claim of infringement for the reason that proof of title was insufficient, but did so without prejudice. This patent was granted to the plaintiff pursuant to Rev. St. § 4895 (35 USCA § 44), providing that: "Patents may be granted and issued or reissued to the assignee of the inventor or discoverer; but the assignment must first be entered of record in the Patent Office." The issuance of the patent by the Patent Office to the plaintiff established, prima facie, ownership. Beckwith Box Toe Co. v. Gowdy (D. C.) 244 F. 805; National Folding-Box & Paper Co. v. Amer. Paper Co. (C. C.) 55 F. 488; Whitcomb v. Spring Valley Coal Co. (C. C.) 47 F. 652. The presumption of regularity which accompanied the issuance of the patent to the plaintiff was sufficient to claim title for purposes of suit for infringement. There was no proof or evidence offered to show that the plaintiff was not the owner of the patent. Its title is established in the absence of proof by the defendant to the contrary. An assignment from Wollenweber to the plaintiff, dated November 27, 1917, was offered in evidence, with the words "Paul F. Wollenweber" in typewriting, and without an acknowledgment under a certificate of the Commissioner of Patents that it was a true copy from the records of his office. The claim is that this assignment was not executed by Wollenweber or delivered by him to the plaintiff, but, since the patent was issued, it must be deemed sufficient to have satisfied the patent office of the assignment. However, this patent has made no impression upon the particular art. The application was eleven years in the Patent Office before issuance. The breaker arm is described as being formed from a roughly triangular blank which has a central elongated slot and ears in line with said slot. The blank is folded to inclose a fiber rubbing block which has a nose or projecting rib that projects through the slot and then the block is secured in that position by means of ears which are folded over. The result is a channel-shaped breaker arm. The nose of the rubbing block projects through a slot in the web of the channel and the two bent over ears take the thrust of the cam. No way is shown of making the arm except from the blank, and no claim to the blank, per se, is established to have been infringed. Plaintiff's expert testified that the advantage of this patent's construction lay in the light weight of the arm which makes possible a higher speed operation, and having the sides of the channel in contact with the rubbing block, thus maintaining the block in position by reason of the tight fit. No such function as a tight fit or an advantage ascribed to it is mentioned. It is shown by Schwarze No. 1,286,803, of prior art, where there is a breaker arm of the channel shape with a pivot at one end and the contact at the other. A cam rubbing block is within the channel intermediate the ends thereof. The block is secured against the web of the channel by a rivet and is compressed between the sides of the channel by means of the transverse rivet. The Schwarze device is built to attain high speed operation. The Ericson patent, No. 1,385,368, is similar. The only mechanical differences between Schwarze and Ericson are pointed out in the claims, which recite, "said sides having portions bent inwardly and compressed against the cam engaging member," and "said sides

having portions adapted to hold the cam engaging member." This refers to the bent over ears. There is no patented invention in this, instead of the rivets shown in the Schwarze and Ericson patents for holding the block. The patent is invalid for want of invention.

Since the decree was erroneous in holding the defendant for unfair competition, it was proper to exonerate the individual defendants who have been charged with acts of unfair competition as well as infringement of patent.

The bill in its entirety should have been dismissed.

Decree modified, with directions to dismiss the bill of complaint.